**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**BHAKTIVINODE FRANKLIN,**

      **Petitioner,**

**v.**                            **Case No.  1:17cv314-MW/CAS**

**MARK S. INCH, Secretary,
Florida Department of
Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On December 21, 2017, Petitioner, Bhaktivinode Franklin, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Petitioner filed a memorandum supporting the petition on May 30, 2018.  ECF No. 9.  Respondent filed an answer on March 26, 2019.  ECF No. 22.  Petitioner filed a reply on July 18, 2019. ECF No. 27.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case. *See* Rule 8(a), R. Gov.
§ 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the
pleadings and attachments before the Court show that Petitioner is not
entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Second Amended Information in the circuit
court of Alachua County, Florida, on April 24, 2012, with Count I—Lewd or
lascivious molestation of U.G., a child 12 years of age or older but less than
16, by a person 18 years or older, by intentionally touching U.G. in a lewd
or lascivious manner or by forcing U.G. to touch Defendant in a lewd or
lascivious manner, on or between February 1, 2009, and November 10,
2009, in violation of section 800.04(5)(c)(2), Florida Statutes; Count II—
Lewd or lascivious battery of U.G., a child 12 years of age or older but less
than 16, by a person 18 years or older, on or between July 7, 2009, and
November 10, 2009, by penetrating the victim's vagina with his penis, but
without committing the crime of sexual battery, in violation of section
800.04(4), Florida Statutes; Count III—contributing to the delinquency or
dependency of U.G., a child less than 18 years of age, on or between
February 1, 2009, and December 31, 2009, in violation of section
827.04(1), Florida Statutes; and Count IV—aggravated stalking of U.G., on

or between July 7, 2009, and November 10, 2009, in violation of §§ 784.048(4) & (5), Florida Statutes.  Ex. A at 76-77.[1]  Petitioner's motion to sever Count IV for trial before a different jury was denied, but the count was bifurcated and allowed to go the jury in a separate trial after the trial of Counts I, II, and III.  Ex. A at 90.

Jury trial was held on July 11-13, 2012, and verdicts on Counts I, II, and III were returned finding Petitioner guilty as charged.  Ex. A at 163-64; H at 651-52.  Trial on Count IV commenced immediately thereafter on July 13, 2012, and the jury found Petitioner guilty as charged.  Ex. A at 165; Ex. H at 692.  Motion for new trial on Counts I, II, III, and IV made on July 13, 2012, was denied.  Ex. H at 693-95.

Judgment was entered and Petitioner was sentenced on July 13, 2012, on Counts I and II to concurrent ten-year terms of imprisonment followed by two years of sex offender community control and then three years of sex offender probation.  He was sentenced on Count III to 364 days in county jail with credit for 364 days.  On Count IV, he was sentenced to five years probation with sex offender conditions consecutive to the sentences in Counts I and II.  Ex. A at 166-73; H at 709-10, 712.  Petitioner

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through U submitted in conjunction with Respondent's answer.  *See* ECF No. 22.

received credit for 487 days time served for Counts I, II, and IV.  Ex. A at 166-73; Ex. H at 710.  An amended judgment and sentence correcting a scrivener's error was rendered on July 25, 2012, *nunc pro tunc* to July 13, 2012.  Ex. A at 191I-191S.

Petitioner, with counsel, appealed to the state First District Court of Appeal.[2]  Ex. A; I; J.  The court affirmed per curiam without opinion on July 5, 2013.  Ex. K.  The mandate was issued on July 23, 2013.  Ex. K.  *See* Franklin v. State, 115 So. 3d 1005 (Fla. 1st DCA 2013) (table).  On September 16, 2013, Petitioner filed a motion to mitigate sentence pursuant to Florida Rule of Criminal Procedure 3.800(c).  Ex. M.  The motion was denied on September 23, 2013.  Ex. N.

On October 4, 2013, Petitioner filed in the First District Court of Appeal a "Petition Alleging Ineffective Assistance of Appellate Counsel" pursuant to Florida Rule of Appellate Procedure 9.141(d).[3]  Ex. O.  On November 25, 2013, the petition was denied on the merits.  Ex. P.  *See* Franklin v. State, 127 So. 3d 726 (Fla. 1st DCA 2013) (Mem.).

---

[2] The claims raised on direct appeal were: (1) trial court error in denying motion for mistrial and motion to strike jury panel; and (2) trial court error in overruling Petitioner's relevance objections.  Ex. I.

[3] Petitioner alleged appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the trial court erred in denying Petitioner's motion to sever Count IV for trial before a different jury.  Ex. O.

On August 26, 2014, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[4]  Ex. S at 1-35.  The postconviction court summarily denied the claims on April 4, 2017.  Ex. S at 37-131.  Petitioner appealed to the First District Court of Appeal, Ex. S,[5] which affirmed per curiam without opinion on July 12, 2017.  Ex. T.  The mandate was issued on September 13, 2017.  *See* Franklin v. State, 228 So. 3d 554 (Fla. 1st DCA 2017) (table).

On December 21, 2017, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising nine grounds for relief.  ECF No. 1.  In his reply filed on July 18, 2019, Petitioner voluntarily dismissed Grounds Two, Five, Six, Eight, and Nine.  ECF No. 27 at 2.

---

[4] In his Rule 3.850 motion, Petitioner raised seven claims of ineffective assistance of trial counsel: (1) misadvising Petitioner resulting in waiver of right to testify; (2) failure to investigate and present evidence at trial; (3) failure to file motion to sever Counts I and II; (4) failure to request proper jury instructions; (5) failure to object to bifurcation rather than severance of Count IV; (6) failure to object or file motion challenging certain conditions of community control and probation barring contact with any minors; and (7) failure to impeach the victim's testimony.  Ex. S.

[5] An initial brief is not required in an appeal from a summary denial of all claims in a Rule 3.850 motion.  *See* Fla. R. App. P. 9.141(b)(2)(C)(i).  Petitioner did not file a brief in his appeal from denial of post-conviction relief.  Where a defendant does not file a brief under these circumstances, the appellate court is required to investigate all possible bases for relief.  *See* Watson v. State, 975 So. 2d 572, 573 n.1 (Fla. 1st DCA 2008).

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497

(1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt." *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth

Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

### <u>Ground 1: Motion for Mistrial and To Strike Jury Panel</u>

Petitioner contends that he was deprived of a fair trial guaranteed by the Federal Constitution when the trial court denied his motion to strike the jury panel and denied his motion for mistrial after a prospective juror stated, "I work for the Alachua County Jail, so I have observed his file."  ECF No. 1 at 4; ECF No. 6 at 15.  Counsel argued to the trial judge that the jury could infer that Petitioner was in custody.  Ex. C at 288.  Petitioner raised a slightly different claim on direct appeal, as he does in this Court, arguing that denial of the motions was an abuse of discretion because the other prospective jurors could have interpreted the comment to mean that Petitioner had prior arrests or prior convictions.  Ex. I at 18, 20-22.

Respondent contends that the claim Petitioner now raises was not exhausted, noting that no federal constitutional claim was presented in the state court.  ECF No. 22 at 20-21.  Only state law authority and argument were provided.[6]  The state appellate court affirmed per curiam without

---

[6] Petitioner argues in his reply that in his direct appeal, he cited <u>Evans v. State</u>, 36 So. 3d 185, 186 (Fla. 4th DCA 2010), which referred to the right to an impartial jury and which cited <u>Holt v. State</u>, 987 So. 3d 237, 239 (Fla. 1st DCA 2008).  ECF No. 27 at 3.  However, neither <u>Evans</u> nor <u>Holt</u> cited any federal authority for the discussion of the right to an impartial jury.  In fact, the court in <u>Holt</u> cited <u>Richardson v. State</u>, 666 So. 2d

discussion.  Ex. K.  In order to seek federal habeas corpus relief, section 2254 requires that the Petitioner exhaust all state court remedies.  Preston, 785 F.3d at 457; 28 U.S.C. § 2254(b)(1).  To do so, Petitioner must present his federal claim in all the appropriate state courts in order to provide the state courts with the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)).  The federal question must have been presented squarely to the state court and plainly defined.  Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004).  Because Petitioner did not present the federal claim to the state court which he presents in this Court, and because the claim can no longer be litigated in state court, his claim is unexhausted and procedurally defaulted.  Nor has Petitioner provided any basis to find cause or prejudice as a basis to allow federal habeas relief on this claim.  Regardless of any procedural default, the claim is without merit and should be denied.[7]

The following colloquy occurred after the judge advised the prospective jurors of the charges against Petitioner:

---

223, 224 (Fla. 2d DCA 1995), which relied solely on the state Constitution in its discussion of a right to trial by an impartial jury.

[7] Section 2254(b)(2) provides that an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

**THE COURT:** . . . . All right.  Ladies and Gentlemen, you've heard the charges made against the defendant.  Does anybody know anything about this particular case?

Yes, Ma'am.

**PROSPECTIVE JUROR [A]:**  I work for the Alachua County jail, so I have observed his file.

**MR. KEARNS [Defense counsel]:**  I'm going to object, Your Honor, and if we can approach the Court.

**THE COURT:** Okay.  If you'll briefly approach.

**(Bench Conference.)**

**MR. KEARNS:**  Your Honor, obviously, she's just indicated that he's in custody and she's seen his file at the jail.  So she has allowed the jury to know that he is in custody.  It's as if he's walking in here with clothes on or as if someone testified he's in custody.

**MS. HUNT [Prosecutor]:**  No.  She just said that she's viewed his file at the jail.  She didn't say that he was currently in custody.  I mean, it can be easily inferred by the fact that there's a criminal case in front of this jury that he has been arrested.  It's not an indication of guilt.  I think with the probative curative instruction, we don't have to strike the whole panel.

**THE COURT:** All right.  Mr. Kearns?

**MR. KEARNS:**  I'm going to be asking for a mistrial because of that notice, or at least I'm going to be asking that this person be excused if she's had access to his file.

**THE COURT:** I don't think there's any objection to her being excused.

**MS. HUNT:** Not at all.

**THE COURT:** Okay.

**MR. KEARNS:**  But I am at this time moving for a mistrial, Your Honor.

**THE COURT:**  Ms. Hunt, based on that?

**MS. HUNT:** The State would not think a mistrial at this point would be appropriate. If we wanted to go to the extreme of striking this panel based on that, I would say that that would be appropriate over and above a mistrial. I wouldn't think - - I think that's still an extreme measure. Again, I think, a curative instruction would be appropriate.

**THE COURT:** Okay. All right. I'm going to deny your motion for mistrial. I'm going to remove this juror for cause. Okay? All right.

**(Bench conference concluded.**)

**THE COURT:** All right. Ms. [A], at this point, I don't think this is the appropriate jury trial for you.

. . . .

**MR. KEARNS:** Your Honor, can we approach again please?

**THE COURT:** You may.

**(Bench conference.)**

**MR. KEARNS:** Just to follow up on my motion, since the Court has denied my motion for mistrial, I would then move that the entire panel be stricken because they were exposed to prejudicial information concerning our client at this time.

**THE COURT:** Okay. What I intend to do is, because I don't think she said that he was actually in custody now, to say the fact that he has been arrested at some point would that influence you in any way? And you can explore that if you wish. . . . I'm going to inquire of the panel, unless there's strong objection, that the fact that at some point he was arrested on these charges, would that have any influence on the panel.

**MS. HUNT:** I think that's appropriate.

**MR. KEARNS:** I think any mention of arrest is a problem, so we would oppose - - we would object to that procedure as well, Your Honor.

. . . .

**THE COURT:** All right. Ladies and gentlemen, Ms. [A] mentioned a point that the defendant previously has been

arrested **on these charges**.  The fact that he has previously
been arrested **on these charges** - - and I told you earlier he's
presumed not guilty at this point - - does it cause anybody
some concern to go forward at this point based on that fact?
Okay.  All right.

> All right.  At this point, I'm going to ask Ms. Hunt to
introduce herself and the state attorney's office representative
in this case.

Ex. C at 288-92 (emphasis added).

Petitioner has not demonstrated that the trial court erred under

Florida law in denying a mistrial and denying the request to dismiss the

entire jury panel.  First, a motion for mistrial was not the appropriate motion

in that the jury had not yet been sworn.  In addition, under Florida law, a

mistrial will be granted only when the error is so prejudicial as to vitiate the

entire trial.  *See* Salazar v. State, 991 So. 2d 364, 372 (Fla. 2008); Cox v.

State, 819 So. 2d 705, 714 (Fla. 2002).  Petitioner has not shown that the

isolated comment for which a curative instruction was given, and the juror

dismissed, was so prejudicial as to vitiate the entire trial that followed.

Nor has Petitioner shown that the alleged error by the trial court in

refusing to dismiss the entire jury panel deprived him of a fair trial.  "The

decision whether to dismiss any or all jurors lies in the sound discretion of

the trial judge."  United States v. Jones, 696 F.2d 479, 492 (7th Cir.1982).

"It is within the discretion of the trial court to determine whether remarks

made by veniremen during the examination of the panel are prejudicial; and
the trial court's decision not to quash the panel will not be disturbed absent
an abuse of that discretion." Bauta v. State, 698 So. 2d 860, 861-62 (Fla.
3d DCA 1997) (quoting State v. Davis, 806 S.W. 2d 441, 443 (Mo. Ct. App.
E.D. 1991)).  It was within the sound discretion of the trial court to
determine that the entire jury panel was not tainted by the isolated
comment of the prospective juror referencing the file she saw at the jail.
During trial, no further references were made to the jail or to Petitioner
having been arrested.  No comments were made or evidence presented
that Petitioner had prior criminal charges.  Further, as the judge cautioned
the jury, any reference to arrest related only to the charges for which
Petitioner was on trial and did not suggest either that Petitioner was
currently in custody or that he had prior arrests or convictions.  The jury
was also reminded of the presumption of innocence that Petitioner carried
throughout the trial.

Petitioner has failed to demonstrate any federal constitutional
violation in the trial court's refusal to dismiss the entire jury panel due to the
isolated comment by one prospective juror.  It is well-settled that a
defendant has a constitutional right to a fair trial by a panel of impartial and
indifferent jurors.  Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "It is not

required, however, that the jurors be totally ignorant of the facts and issues involved." *Id.*

Ultimately, the question is whether a defendant's "trial was not fundamentally fair." Murphy v. Florida, 421 U.S. 794, 799 (1975). Petitioner has the burden to show "essential unfairness," Beck v. Washington, 369 U.S. 541, 558 (1962) (quoting United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 (1956)).  "The petitioner must "show that setting of the trial was inherently prejudicial or that the jury selection process of which he complains permits an inference of actual prejudice." Coleman v. Zant, 708 F.2d 541, 545 (11th Cir. 1983) (quoting Murphy, 421 U.S. at 803).  The court will not disturb a trial court's finding of juror impartiality absent a finding of "manifest error," Patton v. Yount, 467 U.S. 1025, 1031 (1984), and a trial court's finding that the jurors are impartial is entitled to a high degree of deference in a habeas proceeding.  White v. Wheeler, 136 S. Ct. 456, 460 (2015).

In denying the motion to dismiss the panel, and in denying the renewed motion made before the jury was sworn,[8] the trial judge in the present case necessarily determined that the jury panel was impartial. That determination is entitled to a high degree of deference under the

---

[8] Ex. D at 548-49.

AEDPA.  The state district court of appeal also found no error, and affirmed denial of the motions.  Ex. K.  Petitioner has not demonstrated that he was prejudiced by the trial court's refusal to dismiss the entire jury panel or that the trial was essentially unfair.  Petitioner has not demonstrated that the adjudication of the state courts was contrary to or an unreasonable application of any clearly established federal law as determined by the United States Supreme Court or an unreasonable determination of the facts in light of the State court record.  28 U.S.C. § 2254(d).  For these reasons, and despite failure to exhaust this as a federal claim in state court, federal habeas relief on Ground 1 should be denied.

## Ground 3: Ineffective Assistance of Counsel (IAC) Regarding Petitioner Testifying

Petitioner next contends that his trial counsel rendered ineffective assistance by failing to allow Petitioner to testify.  ECF No. 1 at 6.  He alleges that his counsel told him that if he insisted on testifying, counsel would cease to represent him and Petitioner would have to proceed to trial without any counsel.  *Id.*  He argues that this presented a conflict of interest that denied him his right to effective counsel.  ECF No. 9 at 20.  Petitioner asserts prejudice, in that he claims his testimony at trial would have provided a legitimate explanation of "his actions and denials," thus "giving

the jury something tangible to weigh in his defense for credibility and veracity against hostile and scornful witnesses." *Id.* at 24-25.

Petitioner raised this claim in his Rule 3.850 motion in state court. Ex. S at 7-12. In his post-conviction claim in state court, Petitioner argued that if he had testified, he would have told the jury that U.G. lied to get back at him for having another girlfriend and that other prosecution witnesses lied for a variety of reasons. Ex. S at 9-10. No evidentiary hearing was provided, but the post-conviction court addressed the claim at length, citing Petitioner's statements to the trial judge after the State rested its case concerning Petitioner's decision not to testify. Ex. S at 39-41. Petitioner told the court that he understood he was not going to be called to testify; that he had fully discussed the matter with counsel about his right to testify; that he had been advised he had an absolute right to testify; that it was his decision freely and voluntarily not to testify; and that he was not forced, coerced, or threatened not to testify. Ex. G at 497-98.

The post-conviction court also noted in denying the claim that Petitioner's proposed testimony "would have been merely that the victim and State's witnesses were lying. There is not a reasonable probability that this proposed testimony would have affected the outcome of the trial." Ex.

S at 40.  Petitioner appealed to the First District Court of Appeal, which affirmed per curiam without opinion.  Ex. T.

When Petitioner advised the court that the decision not to testify was his own, freely and voluntarily made, Petitioner could have informed the court instead that his counsel coerced him into that decision.  Further, if, as Petitioner contends, his counsel threatened to cease representing him if he decided to testify, it would have been apparent that counsel had already represented him throughout the State's case.  Nothing remained but Petitioner's testimony, if that had been his decision.  Thus, Petitioner's allegation meets the post-conviction court's description of it as "facially absurd."  Ex. S at 39.  Petitioner gave his solemn assurance to the trial court that the decision not to testify was his alone—and at that time Petitioner had a full and fair opportunity to inform the court that he wanted to testify, but he failed to do so.  Therefore, the state court's decision that his postconviction claim was without merit was not objectively unreasonable.

In affirming, the state appellate court was silent as to its reasons.  Ex. T.  The Supreme Court has instructed that when the last adjudication of the state court is silent as to its basis, the habeas court should "look through" the silent adjudication to the last related decision on the merits; and there is

a rebuttable presumption that the last adjudication was based on that earlier reasoning.  Wilson v. Sellers, 138 S. Ct. 1188 (2018).  It can therefore be presumed that in affirming denial of relief on Petitioner's claim, the appellate court was affirming the reasoning of the trial court that the record demonstrated Petitioner's decision not to testify was voluntary, knowing, and freely made.  The state court's adjudication on this claim of ineffective assistance of counsel is entitled to heightened deference under the AEDPA.[9]  Mirzayance, 556 U.S. at 123.  That adjudication was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the record.  Habeas relief on Ground 3 should be denied.

### Ground 4: IAC in Failing to Investigate and Present Evidence

Petitioner contends that his trial counsel rendered ineffective assistance by failing to locate, retrieve, and present U.G.'s journals.  ECF No. 1 at 8; ECF No. 9 at 27.  He raised this claim in his Rule 3.850 motion in state court, where Petitioner contended that he told counsel he could find

---

[9] The post-conviction court correctly identified the standard under which it was analyzing Petitioner's claim of ineffective assistance of counsel.  *See* Ex. S at 38.  Thus, the deferential AEDPA standard applies.  *See, e.g.*, Rimmer v. Sec'y, Fla. Dep't of Corr., 876 F.3d 1039, 1054 (11th Cir. 2017).

the journals that he had taken from U.G. at an old house where Petitioner had worked and that the journals would exonerate him.  Ex. S at 13-14.

The court summarily denied relief.  Ex. S at 41.  The court noted that U.G. testified at trial that Petitioner took her journals and never returned them, and that they memorialized her relationship with Petitioner.  She testified that when her parents became concerned about her relationship with Petitioner, U.G. hid the journals in her room.  Ex. E at 152.  She said Petitioner took the journals from her for "safekeeping" and told her he would return them to her when she turned 18.  Ex. E at 153-54; Ex. F at 234-35.  The post-conviction court found that counsel was not ineffective for failing to obtain and present the journals because the fact that Petitioner took them and hid them showed a consciousness of guilt; and that prejudice was not shown because, whatever the journals contained, they would have shown there was a relationship between Petitioner and U.G. Ex. S at 41.  The State First District Court of Appeal affirmed denial of the claim without discussion.  Ex. T.

Respondent contends that the fact that counsel—if he was aware of their existence as Petitioner alleged—did not obtain and present the journals was the result of a strategic decision.  ECF No. 22 at 43. Respondent also argues, "Logic commands that if these journals would

have revealed what Petitioner contends was only an innocuous, plutonic

relationship between himself and the child victim, there simply would have

been no reason for him to have taken them from the victim and hide them

in an effort to avoid anyone's scrutiny."  ECF No. 22 at 43.

Even if it could be said that the state court erred in finding that

counsel was not deficient for failing to obtain and present the journals, the

Supreme Court reminds us that federal habeas review is not a substitute

for "ordinary" error correction.  <u>Richter</u>, 562 U.S. at 102.  The prisoner must

show there was an error that was "so lacking in justification" there was no

possibility fairminded jurists could disagree.  *Id.*  For a state-court decision

to be an "unreasonable application" of Supreme Court precedent, it must

be more than incorrect—it must be "objectively unreasonable."  <u>Lockyer v.</u>

<u>Andrade</u>, 538 U.S. 63, 75 (2003).

The state court set forth its justification and the state appellate court

affirmed.  The justification for the rulings is not objectively unreasonable.

U.G. testified at trial that she wrote in the journals all the time and that she

wrote about Petitioner in the journals.  Ex. E at 151-52.  She hid them in

her room, under the mattress or in her closet when her parents became

concerned about her relationship with Petitioner.  Ex. E at 152.  Petitioner

took the journals for safekeeping.  Ex. E at 153.  In his Rule 3.850 motion,

Petitioner cited an arrest affidavit by Detective Moore in which it was stated that U.G. told him "she 'poured out her soul' and wrote about her relationship with [Petitioner]. She alleged he took them and buried them at a house where he was working." Ex. S at 13 (citing document at Ex. A at 3).

The allegations of Petitioner's post-conviction claim in state court support the court's finding that there was good reason for counsel not to obtain and present the journals and, moreover, that prejudice had not been demonstrated. Even if the journals had been obtained and presented, if they contained U.G.'s description of her relationship with Petitioner as she testified, there is no reasonable probability—that is, one that undermines confidence in the outcome—that the result of the trial would have been different.[10] *See* Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Meders v. Warden, Ga.

---

[10] The victim, U.G., testified at trial concerning her relationship with Petitioner, which became sexual with him when she was fifteen-years-old and he was thirty-three. She had known petitioner since she was eight-years-old. He was a neighbor and, when she became a teenager, she would frequently babysit his young children. Ex. E at 75-89. U.G. testified that Petitioner had full sexual intercourse with her many times and that he performed other acts on her including sex "from the backside" and bondage, which made her feel humiliated. Ex. E at 158, 166-67. U.G. testified that Petitioner slapped her, hit her, bit her "profusely" all over her body, and hurt her when he had her tied up. Ex. E at 156-57, 166-67. She testified that once, after an argument, he had "rough sex" with her against her will. Ex. E at 173-74.

Diagnostic Prison, 911 F.3d 1335, 1348 (11th Cir. 2019 ) (quoting Richter,

562 U.S. at 112).

Petitioner has not shown that the adjudication of the state court

resulted in a decision that is contrary to or an unreasonable application of

clearly established federal law as determined by the Supreme Court or an

unreasonable determination of the facts in light of the evidence presented.

Federal habeas relief on Ground 4 should be denied.

### Ground 7: Motion to Sever Count IV

Petitioner contends that his trial counsel rendered ineffective

assistance by failing to object to the prejudicial effect of bifurcation of Count

IV—aggravated stalking—rather than severance, and the resulting trial of

Count IV by the same jury as heard Counts I, II, and III.  ECF No. 1 at 12.

In his accompanying memorandum, Petitioner argues somewhat differently,

mainly alleging trial court error in not granting severance over counsel's

"strong objection."[11]  ECF No. 9 at 46.  He argues that because of the

bifurcation, voir dire of the jury panel at the beginning of trial on Counts I

---

[11] A claim of trial court error was not presented to the state appellate court on direct appeal from the convictions and sentences or in the Rule 3.850 motion; thus, it is unexhausted and no grounds have been provided to justify excusing that procedural default.  Accordingly, this claim is addressed solely on the basis of Petitioner's claim of ineffective assistance of trial counsel.

through III did not include voir dire on the stalking charge and that his trial counsel did not ask for voir dire on the stalking charge. *Id.* at 46, 49.

Petitioner argued in his Rule 3.850 motion in state court that trial counsel was ineffective for failing to object to the prejudicial effect of bifurcation. Ex. S at 24. The state court denied relief, finding that the record shows counsel moved to sever Count IV, which motion was denied, with the court granting bifurcation instead. Ex. S at 43-44. The post-conviction court also found that there is no reasonable probability that the motion to sever for trial before a separate jury would have been granted if counsel had argued it differently. The court further concluded there was no reasonable probability that, but for counsel's alleged error, the outcome of the trial would have been different. Ex. S at 44. The state appellate court affirmed without opinion. Ex. T.

It is noteworthy that Petitioner previously filed a petition in the state appellate court alleging ineffective assistance of appellate counsel for failing to appeal the denial of severance of Count IV for trial before a separate jury. Ex. O. The appellate court denied the petition on the merits without discussion. Ex. P. By denying the petition, the state appellate court determined what would have happened had appellate counsel raised this state law claim. *See* Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338,

1354-55 (11th Cir. 2005) (stating that the state court "has already told us how the issues would have been resolved under Florida law had [counsel] done what [Petitioner] argues he should have done . . . ." and holding Petitioner cannot establish either deficient performance or prejudice).

As the post-conviction court found in the order on Petitioner's Rule 3.850 motion, the record reflects that trial counsel filed a motion to sever Count IV for trial, citing the prejudicial effect of having the jury hear that a circuit judge had granted an injunction against Petitioner based on the same conduct alleged in Counts I and II. Ex. A at 80. A hearing was held on the motion on July 3, 2012, at which trial counsel argued for severance and told the court he strongly objected to bifurcation. Ex. B at 251-254, 258. The trial court ruled that Count IV would be bifurcated for trial but not heard by a separate jury. Ex. B at 257. The court's justification included the fact that if the case was severed for trial before a different jury, the State would have to pick a new jury and present all the same evidence it presented for Counts I and II, and in addition present evidence of the issuance of the injunction. Ex. B at 259.

The post-conviction court's finding that there was no reasonable probability that the motion to sever would have been granted if counsel had argued the motion differently is supported by Florida law. The standard of

review for cases involving motions to sever charges is one of abuse of

discretion.  <u>Crossley v. State</u>, 596 So. 2d 447, 450 (Fla. 1992).  The trial

court agreed with counsel that Petitioner would be prejudiced in his trial of

Counts I through III if the jury heard evidence of the injunction against

Petitioner before deciding those charges.  However, that concern was

alleviated by the bifurcation and separate trial of Count IV immediately

following the verdict in the first three counts.  The trial court also voiced

other justification why severance for trial before a separate jury was, in the

court's discretion, not warranted.

Petitioner has provided no allegations of fact or law to demonstrate

that trial of Count IV by the same jury, but in a separate proceeding, denied

him a fair trial or that, if Count IV were tried by a separate jury, the outcome

of the trial would have been different.  Petitioner does no more than

speculate that voir dire of the jury panel on the issue of aggravated stalking

was necessary to assure a fair trial of Count IV and that, but for counsel's

failure to make additional arguments in support of the motion to sever, the

result would have been different.

"[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable

professional judgment."  <u>Strickland</u>, 466 U.S. at 690.  Counsel's

performance is deficient only if it falls outside the wide range of reasonable professional assistance. *Id.* at 689. The state courts determined that counsel did not render ineffective assistance and that determination is entitled to a high degree of deference. *See* Mirzayance, 556 U.S. at 123-24 (reiterating that judicial scrutiny must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting Strickland, 466 U.S. at 689).

Petitioner cannot demonstrate that adjudication of his ineffective assistance of counsel claim regarding the motion for severance was objectively unreasonable or contrary to any clearly established federal law as determined by the United States Supreme Court or that it was an unreasonable determination of facts in light of the evidence in the record. Habeas relief on Ground 7 should be denied.

## Conclusion

Based on the foregoing, Petitioner Bhaktivinode Franklin is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

IN CHAMBERS at Tallahassee, Florida, on July 31, 2019.

> **s/ Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**